UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIAN A. VELEZ,

                    Plaintiff,

        -against-

CITY OF NEW YORK; JOHN DOE #1; JANE
DOE #2; MR. VASQUEZ; JOHN DOE #3;
MARIA D. ACOSTAPERALTA; JOHN DOE
#4; JOHN DOE #5; JOHN DOE #6; MERABE
FAULKNER,

                    Defendants.

                                            26-CV-0229 (LLS)

                                            ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

        Plaintiff, who is proceeding *pro se* and *in forma pauperis* ("IFP"), filed a complaint

alleging that Defendant City of New York violated his constitutional and statutory rights secured

by 42 U.S.C. §§ 1981, 1983, and 1985-86. By order dated February 6, 2026, the Court directed

Plaintiff to amend his complaint to address deficiencies in his original pleading. The primary

deficiency was that it failed to comply with Rule 8 of the Federal Rules of Civil Procedure

because, "[i]nstead of providing factual allegations showing who harmed [Plaintiff] and how

they did so, Plaintiff relie[d] almost exclusively on labels and '[t]hreadbare recitals of the

elements of a cause of action,' which are essentially legal conclusions that the Court need not

accept at the pleading stage." (ECF No. 8, at 6 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).)

        Plaintiff filed an amended complaint on March 5, 2026, and the Court has reviewed it.

The action is dismissed for the reasons set forth below.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Iqbal*, 556 U.S. at 678-79. But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

2

**BACKGROUND**

In the amended complaint, Plaintiff identifies ten incidents in which he concludes that officers of the New York City Police Department ("NYPD") violated his rights under the Fourth and Fourteenth Amendments. Just as in the original complaint, however, his allegations are conclusory and fail to set forth facts from which the Court could infer that his claims are plausible. The Court nevertheless understands Plaintiff to allege the following.[1]

Plaintiff begins by attributing to Defendant City of New York "a motivated class-based custom that targets the rights and well-being of individuals, groups, and families in low-income neighborhoods and public-housing areas across communities in New York City." (ECF No. 9, at ¶ 36.) Although he does not provide well-pleaded facts in support of this allegation, he concludes that the "NYPD is popularly known for this." (*Id*.; *see also id*. ("A long history of court records help support the proof of this, a great amount of data across the internet helps to support the proof of this, and the people's knowledge and experiences of this motivated class-based custom also helps to support the proof of this.").)

Plaintiff next describes "Incident #1," which took place from August 28, 2024 through March 5, 2026, inside of Plaintiff's residence at a public housing project, and which he attributes to all Defendants in this action. (*Id*. at ¶ 45.) Although his allegations are difficult to understand, he seems to suggest that Defendants have commandeered the electronic appliances and devices in his apartment; he says that the "NYPD misuses the Plaintiff's basic utility systems and basic personal devices to malintentionally interfere with them," which Plaintiff characterizes as "dangerous and serious acts of violence on the Plaintiff with continual audio attacks and assaults

---

[1] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

on the Plaintiff." (*Id*.) He does not provide, however, any details concerning the alleged "audio attacks or assaults."

Plaintiff explains that "Incident #2" occurred on October 1, 2024, inside of his residence, when he attempted to call a lawyer to seek legal assistance related to the events of Incident #1. (*Id*. at ¶ 46.) During that phone call, "the NYPD interfered with the Plaintiff's device and assaulted him, using his device as a dangerous weapon and causing serious auditory and bodily injuries on the Plaintiff," which include tinnitus. (*Id*.) He does not provide any other details or any basis for his belief that the NYPD was responsible for the apparent malfunction of his device.

Plaintiff alleges that "Incident #3" and "Incident #4" both happened in the Fall of 2024, in two separate locations in Manhattan. He states that during Incident #3, the NYPD, "through their unlawful search and seizure and non-stop monitoring of the Plaintiff, . . . were able to plan the Plaintiff exiting his residential building." (*Id*. at ¶ 47.) He adds that "[su]bsequently, the Plaintiff was found with NYPD members using threats of arrest at the corner of his home." (*Id*.) He does not explain what any Defendant or any NYPD official actually did. Similarly, as to Incident #4, he alleges that "[t]he Plaintiff was found with an NYPD member timing his arrival to his local supermarket." (*Id*.) He does not provide any facts suggesting that his freedom of movement was restricted or that he was not free to leave any of these apparent encounters with police officers.

"Incident #5" and "Incident #6" both occurred on January 8, 2025 and January 15, 2025, respectively, both at the NYPD's Fifth Precinct stationhouse. (*Id*. at ¶ 48.) For Incident #5, Plaintiff states that upon his arrival to the police station, a detective immediately recognized him and "proved to possess the plan of committing acts on the Plaintiff at his immediate arrival to the

4

local precinct." (*Id.*) He adds that the detective had no intention of providing services to Plaintiff, but instead "taunt[ed] and attempt[ed] to intimidate" him. (*Id.*) For Incident #6, Plaintiff alleges that a police officer failed to take his report that unidentified private parties pushed him into oncoming traffic on an unspecified date. (*Id.*) He again does not provide any facts suggesting that he was not free to leave these encounters with officers at the police station.

"Incident #7" reportedly occurred on April 1, 2025 at the same police station. (*Id.* at ¶ 49.) He alleges that Defendant John Doe #4 "taunted the Plaintiff and called the Plaintiff gay and homosexual, or, indirectly did so by asking the Plaintiff whether he was gay or not." (*Id.*) Plaintiff does not allege that any other acts occurred during Incident #7 and does not suggest that his freedom of movement was restricted during the incident.

Plaintiff alleges that "Incident #8" and "Incident #9" both occurred on April 7, 2025, both at locations near his home and both relating to Plaintiff's alleged attempts to file an administrative claim with the Office of the New York City Comptroller. (*Id.* at ¶ 50.) He states that "Incident #8 involved the Defendants once again committing unlawful searches and seizures" (*id.*), but he provides no facts about this encounter other than his conclusion that the interaction was unlawful. Rather than describing an unlawful search or seizure, Plaintiff states that an officer used his vehicle's loudspeaker to threaten him with arrest. (*Id.*) Plaintiff neglects to provide any facts concerning Incident #9, other than its date and the allegation that the officer at issue was in a "non-standard enforcement vehicle." (*Id.*) Plaintiff does not provide any facts suggesting that he was not free to leave those encounters with the police.

Finally, Plaintiff alleges that "Incident #10" occurred on July 30, 2025, at the NYPD's Fifth Precinct stationhouse. (*Id.* at ¶ 51.) He states that on that date, an unidentified police officer again taunted him about his sexuality. (*Id.*) He does not allege that he was not free to leave.

Plaintiff demands $6 million in damages and injunctive relief. (*Id*. at ¶¶ 52, 54.)

## DISCUSSION

### A.    The civil rights statutes

As explained below, the amended complaint does not cure the deficiencies identified in the Court's order dated February 6, 2026, and therefore, it fails to state a claim under any of the civil rights statutes on which Plaintiff relies. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 1.    42 U.S.C. § 1983

Plaintiff asserts claims under 42 U.S.C. § 1983 and names the City of New York and several NYPD officers and employees as defendants. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

Plaintiff's Section 1983 claims fail. First, like the original complaint, the amended complaint fails to comply with Rule 8 because it lacks facts showing that his claims are plausible. *See Iqbal*, 556 U.S. at 678-79. Plaintiff suggests that Defendants violated his constitutional rights on ten separate occasions, yet for none of those occasions does Plaintiff describe what Defendants or other persons actually did to Plaintiff. Rather, just as in the original complaint, Plaintiff's amended complaint relies almost exclusively on labels and "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions that the Court need not accept at the pleading stage. *Iqbal*, 556 U.S. at 678. For instance, he concludes that the NYPD took control of the electronic devices in his home with an intent to cause him physical harm, but he fails to provide the basis of that belief that the NYPD was involved. He also repeatedly concludes that Defendants unlawfully seized him, but none of the facts indicate that any Defendant restrained his movement at any time. Additionally, while Plaintiff alleges

6

other conduct from Defendants that, if true, certainly would be disturbing (e.g., failing to take his report[2], taunting him for their perception of his sexuality, using the vehicle loudspeaker to speak to Plaintiff while he was en route to the Comptroller's Office), none of those allegations suggest that Plaintiff's Fourth or Fourteenth Amendment rights were violated, despite Plaintiff's stated conclusion that they were. Ultimately, Rule 8 requires well-pleaded facts. But a "[p]laintiff's beliefs − however strongly he may hold them − are not facts." *Morren v. New York Univ.*, No. 20-CV-10802 (JPO) (OTW), 2022 WL 1666918, at *18 (S.D.N.Y. Apr. 29, 2022), *report and recommendation adopted*, 2022 WL 1665013 (S.D.N.Y. May 25, 2022); *see Lefkowitz v. John Wiley & Sons, Inc.*, No. 13-CV-6414, 2014 WL 2619815, at *10 (S.D.N.Y. June 2, 2014) (complaint must set forth facts showing basis for information and belief); *Johnson v. Univ. of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 266 (W.D.N.Y. 2010) (even where necessary evidence is in "exclusive control of the defendant, . . . plaintiff must still set forth the factual basis for that belief"). Plaintiff therefore fails to state a claim under Section 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.    42 U.S.C. § 1981

In the amended complaint, Plaintiff reasserts his claim under Section 1981, but that claim fails for the reasons set forth in the Court's order dated February 6, 2026. "[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of

---

[2] As the Court explained in its February 6, 2026 order, there is no federal constitutional duty that requires a government official to investigate or protect an individual from harm, except in rare circumstances not present here. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *see, e.g.*, *Gong v. Sarnoff*, No. 23-CV-0343 (LJL), 2024 WL 3638335, at *7 (S.D.N.Y. Aug. 1, 2024)  ("It is settled that the State has no general Due Process obligation to ensure the safety, care, and protection of individuals who are not in its custody. Also, [i]t is well established that [t]here is no constitutional right to an investigation by government officials." (internal quotation marks and citations omitted, alterations in original)).

rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989); *see Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (holding "that § 1981 does not provide a separate private right of action against state actors"). The Court therefore dismisses any claims Plaintiff seeks to assert under Section 1981 against Defendants, all of whom are state actors, for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.      42 U.S.C. §§ 1985-86

Similarly, Plaintiff reasserts his claims under Section 1985 and 1986, but those claims likewise fail for the reasons set forth in the Court's order dated February 6, 2026.

To state a claim under Section 1985(3), a plaintiff must show the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of his right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [§ 1985(3)] conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (per curiam)).

Vague and unsupported assertions of a claim of conspiracy will not suffice. *See, e.g.*, *Wang v. Miller,* 356 F. App'x 516, 517 (2d Cir. 2009) (summary order). To maintain an action under Section 1985, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotation marks omitted).

Plaintiff fails to state a claim for conspiracy under Section 1985. Plaintiff alleges no specific, nonconclusory facts suggesting that Defendants or anyone else entered into an

agreement to deprive Plaintiff of his civil rights or took any overt act directed towards those ends. He also fails to set forth any facts suggesting that Defendants' conduct was motivated by Defendant's animus on the basis of Plaintiff's race, color, or other protected characteristic, or that it resulted in a denial of his rights. The Court therefore dismisses Plaintiff's claims under Section 1985 for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1986 provides a cause of action against anyone who, "having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Mian*, 7 F.3d at 1088 (quoting *Katz v. Morgenthau*, 709 F. Supp. 1219, 1236 (S.D.N.Y. 1989), *aff'd in part and rev'd in part on other grounds*, 892 F.2d 20 (2d Cir. 1989)). Thus, a Section 1986 claim must be predicated upon a valid Section 1985 claim. *Id.* (citing *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978)).

As discussed above, Plaintiff has failed to state a valid conspiracy claim under Section 1985, which is a mandatory predicate for a claim under Section 1986. The Court therefore dismisses Plaintiff Section 1986 claims for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## B.    Supplemental jurisdiction declined

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New*

*York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## C.    Further leave to amend denied

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

Plaintiff's amended complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court directs the Clerk of Court to enter judgment in this action.

SO ORDERED.

Dated:    March 11, 2026
        New York, New York

                                        *Louis L. Stanton*
                                      Louis L. Stanton
                                        U.S.D.J.

10